OSCAR FABIAN RAMIREZ PEREZ,

        Petitioner,

    v.                                     Case No. 26-cv-0158-bhl

DALE J. SCHMIDT, et al.,

        Respondents.

## DECISION AND ORDER

Oscar Fabian Ramirez Perez, who is currently being detained at the Dodge County Jail in Juneau, Wisconsin on the authority of U.S. Immigration and Customs Enforcement officials, filed a motion for a temporary restraining order in conjunction with his petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. For the reasons explained below, the Court will deny Ramirez Perez's motion for a temporary restraining order and his petition for writ of habeas corpus.

## BACKGROUND

On March 9, 2021, the Secretary for the Department of Homeland Security (DHS) designated Venezuela for Temporary Protected Status (TPS), allowing Venezuelans residing in the U.S. since March 8, 2021 to apply for protection.[1] (ECF No. 1 ¶29.) The Secretary did so again on October 3, 2023, allowing more recently arrived Venezuelans to apply. (*Id.* (citing 88 Fed. Reg. 68130 (Oct. 3, 2023)).) On January 17, 2025, the DHS Secretary extended the 2023 Venezuela designation by 18 months, through October 2, 2026. (*Id.* at ¶31.) On February 3, 2025, then-DHS Secretary Kristi Noem vacated DHS's January 17, 2025 extension of TPS for Venezuela. (*Id.* ¶ 33 (citing 90 Fed. Reg. 8805 (Feb. 3, 2025)).) On February 5, 2025, DHS published a notice in the Federal Register purporting to terminate the 2023 Venezuela designation. 90 Fed. Reg. 9040 (Feb. 5, 2025). On September 8, 2025, DHS published a notice in the Federal

---

[1] Although the Immigration and Nationality Act originally granted this authority to the Attorney General, Congress later transferred it to the Secretary of Homeland Security. *See* Homeland Security Act of 2002, Public Law No. 107-296, 116 Stat. 2135 (2002).

Register terminating the 2021 designation of TPS for Venezuela. 90 Fed. Reg. 43225 (Sept. 8, 2025).

Ramirez Perez is a Venezuelan national who entered the United States on March 10, 2023. (*Id.* ¶1.) He entered after an appointment at the border via the (now defunct) U.S. Customs and Border Protection One Program and was paroled into the United States. (*Id.*) Ramirez Perez is a civil engineer and the father of a two-year old U.S. citizen. (ECF No. 1 ¶2.)

One year after his entry, on March 6, 2024, Ramirez Perez submitted an asylum petition and received authorization to work in the United States. (ECF No. 2 at 3.) On January 25, 2025, Ramirez Perez applied for TPS pursuant to the (now-vacated) 2023 designation for Venezuela, and its January 17, 2025 extension, which purported to extend the protected status through October 2, 2026. (*Id.*; ECF No. 1 ¶¶31–32.) United States Citizenship and Immigration Services (USCIS) confirmed receipt of the application and began its review. (ECF No. 2 at 3.)

On November 18, 2025, Ramirez Perez was arrested by immigration officials as he was starting his car to go to work. (ECF No. 1 ¶3.) He has been detained at the Dodge County Jail since his arrest. (*Id.* ¶¶4, 11, 14.) Ramirez Perez maintains that he has established a prima facie case for TPS eligibility, thus protecting him from detention and removal. (*Id.* ¶5 (citing 8 U.S.C. §1254a(4)(B)).)

On November 20, 2025, USCIS informed Ramirez Perez that his application's adjudication was terminated based on the DHS Secretary's determination that Venezuela no longer qualified for TPS designation. (*Id.* ¶23; ECF No. 1-6 at 4.) On February 11, 2026, the Chicago Immigration Court "pretermitted," or terminated without a hearing, Ramirez Perez's asylum application based on an Asylum Cooperative Agreement and entered a removal order. (ECF No. 10 at 2 (citing ECF No. 10-3).) To date, neither party has updated the Court on any further developments in Ramirez Perez's removal proceedings. As far as the Court is aware, Ramirez Perez remains detained at the Dodge County Jail.

On February 19, 2025, a group called the National Temporary Protected Status Alliance, along with seven individual Venezuelan TPS holders, sued the federal government in the Northern District of California, alleging that terminating Venezuela's 2023 TPS and vacating its extension violated the Administrative Procedure Act (APA) and the Fifth Amendment. (ECF No. 1 ¶36.) Ramirez Perez alleges he is a member of the National Temporary Protected Status Alliance. (*Id.* ¶¶1, 7.) On September 5, 2025, the district court granted the plaintiffs' motion for summary

judgment on their APA claims, set aside the Secretary's vacatur of the January 17, 2025 extension and her termination of Venezuela's 2023 TPS. (*Id.* ¶37.) The summary judgment motion did not seek declaratory relief. (*Id.*) On October 3, 2025, the Supreme Court of the United States granted the Secretary's motion for an emergency stay. (*Id.*) Two months later, on December 10, 2025, the district court entered a declaratory judgment, declaring the DHS Secretary's vacatur and termination unlawful. (*Id.* ¶38.) The court stayed its declaration for two weeks to permit an appeal or a stay. (*Id.*) Although the government appealed, it did not seek a stay, and the declaration went into effect on December 25, 2025. (*Id.*) Ramirez Perez maintains that, under the December 10 order, he retains TPS, because the court declared that the Secretary's vacatur and termination of Venezuela's 2023 TPS designation violated the APA. (*Id.* ¶39.) Ramirez Perez further maintains that his detention violates the Due Process Clause of the Fifth Amendment. (*Id.*¶¶46–49.) Ramirez Perez seeks a Court order releasing him from ICE custody. (*Id.* ¶50.)

## ANALYSIS

A habeas petition under 28 U.S.C. §2241 allows persons in custody to challenge the fact or duration of their confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973); *Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994). The Supreme Court has recognized Section 2241 as a forum for statutory challenges to detention orders in immigration proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). As previously noted, Ramirez Perez seeks habeas relief under 28 U.S.C. §2241, claiming in Count One that his detention violates the Immigration and Nationality Act (INA) and in Count Two that his detention violates the Fifth Amendment's Due Process Clause. (ECF No. 1 ¶¶51–58.) Specifically, he contends that he cannot be detained under the INA as a TPS beneficiary and that his detention violates the Due Process Clause.

Respondents' position is that Ramirez Perez does not now possess, nor has he ever been granted, TPS status by the USCIS and is subject to mandatory detention under 8 U.S.C. §1225(b)(2)(A) as an "applicant for admission" under 8 U.S.C. §1225(a)(1). Respondents further contend that Ramirez Perez's due process claim fails because he has not submitted any evidence that he is being detained for any purpose beyond the resolution of his removal proceedings. Last, Respondents argue that Ramirez Perez's request for injunctive relief fails because the National Temporary Protected Status Alliance decision is not controlling law in this district and Ramirez Perez cannot demonstrate a likelihood of success on the merits as he is not a TPS beneficiary.

**I. Ramirez Perez is Not a TPS Beneficiary Under 8 U.S.C. §1254a.**

As part of the Immigration Act of 1990, Congress created the TPS program to provide humanitarian relief due to war, natural disasters, or other extraordinary and temporary conditions to foreign nationals from specified countries. *See* 8 U.S.C. §1254a; *see also Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). The Secretary of Homeland Security is authorized to designate foreign countries for temporary protected status under certain conditions. 8 U.S.C. §1254a(b)(1). The initial designation lasts for 6, 12, or 18 months, at the Secretary's discretion. *See* §1254a(b)(2). Foreign nationals found eligible for the TPS program are entitled to certain benefits, including temporary protection from removal and authorization to engage in employment in the United States. *See* §1254a(a)(1). Such foreign nationals, however, are not automatically entitled to TPS benefits; they must submit a registration application for processing and approval. §1254a(c)(1)(A); *see also* 8 C.F.R. §244.6.

A foreign national's TPS application must establish three basic criteria for eligibility: (1) he must have "been continuously physically present in the United States since the effective date of the most recent designation" of the foreign country; (2) he must have "continuously resided in the United States since such date as the [Secretary] may designate;" and (3) he must be "admissible as an immigrant" and "not ineligible for temporary protected status" based on his criminal history or other delineated conduct (*e.g.*, terrorist activity or religious persecution of others). 8 U.S.C. §1254a(c)(1)(A); *see also* 8 C.F.R. §244.2.

The statute also provides for temporary benefits during the pendency of a TPS application, but only after the foreign national "establishes a prima facie case of eligibility." 8 U.S.C. §1254a(a)(4)(B). This prima facie eligibility requirement distinguishes the TPS program from other immigration programs where the filing of a benefits application is itself sufficient to trigger temporary benefits. *Compare* 8 U.S.C. §1154(a)(1)(D)(i)(I) (granting employment authorizations to non-citizen immigrants who "filed a petition"), *with* 8 U.S.C. §1254a(a)(4)(B) (making temporary benefits available only once the non-citizen immigrant "establishes a prima facie case of eligibility"). Federal regulations explain that "temporary treatment benefits" under TPS are available during the pendency of full review of the application only "if the application establishes the alien's prima facie eligibility for Temporary Protected Status." 8 C.F.R. §244.5(b). To establish prima facie eligibility, the applicant must file "a completed application . . . containing factual information that if unrebutted will establish a claim of eligibility." 8 C.F.R. §244.1.

The TPS statute provides that "[a]n alien provided temporary protected status . . . shall not be detained . . . on the basis of the alien's immigration status in the United States." 8 U.S.C. §1254a(d)(4). Even when, as here, a TPS application remains pending, an alien is entitled to certain protections if he or she "establishes a prima facie case of eligibility[.]" §1254a(a)(4)(B). "TPS protects its recipients from removal only while the designation is valid; it affords no pathway to family reunification, permanent residency, or citizenship." *Dhakal v. Sessions*, 895 F.3d 532, 537 (7th Cir. 2018.) Under this statute, courts have considered writs of habeas corpus and determined that detained petitioners with TPS cannot remain detained pending lawful immigration proceedings. *See e.g., Rojas v. Venegas*, No. 1:25-cv-00056, 2025 WL 996421, at *1 (S.D. Tex. Apr. 2, 2025) ("The Court holds that Petitioner is a Venezuelan national with valid Temporary Protected Status and was wrongfully detained under 8 U.S.C. §1254a(a)(1)(A)(i).").

Ramirez Perez acknowledges that he was never actually granted TPS and USCIS has never determined that he was prima facie eligible prior to the removal of TPS for Venezuelan nationals. (ECF No. 10 at 3.) Instead, Ramirez Perez asks this Court to perform the agency's function, determine his admissibility as an immigrant, and affirmatively grant him prima facie TPS designation.

Ramirez Perez has provided no authority under which this Court or any district court is granted the power to determine whether a foreign national has established a prima facie case of eligibility for TPS. Neither the statute nor its accompanying regulations specify when or how a foreign national is expected to "establish a prima facie case of eligibility for benefits." *Osman v. Schmidt*, No. 25-CV-286, 2025 WL 870048, at *2 (E.D. Wis. Mar. 20, 2025) (holding that determining TPS is a decision for USCIS, not the federal district courts, as "nothing in the text or history of the statute or [in] the structure [of] immigration law generally suggests that prima facie eligibility is a determination for a federal district court."). In *Osman*, the petitioner believed his detention was unlawful because he had applied for TPS and believed he met the criteria for TPS benefits under 8 U.S.C. §1254a(a)(4)(B). *Id.* at *1. The Court noted that where USCIS had not deemed the petitioner entitled to or able to establish a prima facie case of eligibility for benefits, the Court should not supersede USCIS by way of a petition for writ of habeas corpus. *Id.* at *2. The Court declined to intervene and denied the petitioner's petition for writ of habeas corpus. *Id.* at *3. The Court agrees with the reasoning and conclusion in *Osman*. There is no authority that suggests TPS is established by virtue of a petitioner filing an application and the Court concludes

that determining whether a foreign national is prima facie eligible for TPS is a decision for USCIS, not a federal district court.

Ramirez Perez also argues that he is entitled to habeas release based on the order entered in *National TPS Alliance v. Noem*, No. 25-cv-1766, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025). In response to Noem's termination of the Venezuela TPS, the National TPS Alliance, a nonprofit organization representing Venezuelan TPS holders nationwide, and seven individual TPS holders, sued Secretary Noem, DHS and the United States in the U.S. District Court for the Northern District of California. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025), *aff'd*, 166 F.4th 739 (9th Cir. 2026). In that case, the district court found that the DHS Secretary lacked statutory authority to vacate her predecessor's extension of the 2023 TPS Designation and exceeded her authority when she purported to invalidate documentation that had already been issued pursuant to the extension. *Id.* at 1144–47. The district court vacated Noem's actions under Section 706 of the APA and entered final judgment in favor of plaintiffs noting the "significant rights of the Venezuelan . . . TPS holders who have lost or will lose status in the absence of relief . . . ." *Id.* at 1160–62, 64. On October 3, 2025, the Supreme Court stayed the district court's order "pending the disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari, if such writ is timely sought." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025). On January 28, 2026, the Ninth Circuit affirmed the district court's September 5, 2025 order finding that the DHS Secretary had exceeded her statutory authority in revoking TPS protections for Venezuelans and Haitians. *Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026). There are at least two problems with Petitioner's reliance on the *National TPS Alliance* decision.

First, as a legal matter, a ruling by the Ninth Circuit or a California district court is not binding on this Court. Decisions from other circuits and other district courts are non-precedential in this district. *See United States v. Glaser* 14 F.3d 1213, 1216 (7th Cir. 1994) ("A district court in Wisconsin must follow [Seventh Circuit] decisions, but it owes no more than respectful consideration to the views of other circuits."); *see also Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. (citing 18 J. Moore et al., Moore's Federal Practice §134.02[1][d], p. 134-26 (3d ed. 2011))). Moreover, the relief issued in *National TPS Alliance* is in essence a universal injunction that purports to bind

individuals who were not parties to that action, and the power to issue such relief "likely exceed[s] the equitable authority that Congress has granted to federal courts." *Trump v. CASA*, 606 U.S. 831, 837 (2025). As confirmed in *CASA*, a federal district court lacks the authority to issue equitable relief as to non-parties. *Id.* at 850–51.

Second, as a matter of the factual record, it is undisputed Ramirez Perez has never been granted TPS. While the *National TPS Alliance* decision purported to address the stripping of TPS from certain foreign nationals, Ramirez Perez is not a member of that group because USCIS never granted him TPS. Moreover, applying the *National TPS Alliance* court's order here would also contradict basic habeas corpus principles. The Supreme Court has made clear that "[r]egardless of whether [] detainees formally request release from confinement," if "their claims for relief necessarily imply the invalidity of their confinement[], . . . their claims fall within the core of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (cleaned up). And a habeas petitioner must name the petitioner's *immediate* custodian— *i.e.*, the custodian who has actual custody over the petitioner and can produce the "corpus." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). "[T]he petitioner's *immediate* custodian—the warden of the prison or other facility in which the petitioner is confined—is the only proper respondent." *Bridges v. Chambers*, 425 F.3d 1048, 1050 (7th Cir. 2005). "Failure to name the petitioner's custodian as a respondent deprives federal courts of personal jurisdiction" needed to issue relief. *Stanley v. Cal. Sup. Ct.*, 21 F.3d 359, 360 (9th Cir. 1994); *see also Padilla*, 542 U.S. at 444. Thus, a federal district court lacks authority to issue the writ in favor of a habeas petitioner who seeks habeas relief in a judicial district in which he is not confined, and the immediate custodian is not located. *See Padilla*, 542 U.S. at 442–43. And a judgment entered without personal jurisdiction over a defendant is void as to that defendant. *See Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010).

Here, Ramirez Perez is confined outside of the Northern District of California by immediate custodians who are also outside that district and have not been named in the lawsuit. At the time of filing this habeas petition, Ramirez Perez was detained at the Dodge County Jail in Juneau, Wisconsin, which is obviously outside the Northern District of California. Ramirez Perez's immediate custodian is Dale J. Schmidt, the Dodge County Sheriff, and he is not a party in the Northern District of California case. Consequently, subjecting Sheriff Schmidt to the judgment of the Northern District of California would be inconsistent with the immediate

custodian rule. *See Padilla*, 542 U.S. at 439–42; *see also Bridges*, 425 F.3d at 1050 (noting that if a petitioner could sue the prison warden's supervisor—i.e., the Attorney General—then "every federal prisoner and detained alien could file his petition either in the District of Columbia federal district or in any other federal district in which 'a substantial part of the events or omissions giving rise to the claim occurred.'" (citations omitted)). As such, the *National TPS Alliance* decision is not binding on this Court and does not have any preclusive effect.

## II. Ramirez Perez's Detention Does Not Violate Due Process.

In Count Two, Ramirez Perez claims his detention violates his due process rights under the Fifth Amendment. (ECF No. 1 ¶¶56–58.) He argues that the "Court need not delve further in an attempt to understand other aspects of Petitioner's immigration status, because TPS protection remains valid even if [he] has a final removal order." (ECF No. 1 ¶45.) As previously noted, however, Ramirez Perez does not have and has never had TPS protection.

The Court summarized the due process issue in *Cirrus Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); *Espinoza Hernandez v. Olson*, No. 25-cv-1670-bhl, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026) and *Moran Rayo v. Olson*, No. 25-cv-2064-bhl, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026). In *Cirrus Rojas*, the Court stated:

> Given the caselaw and the well-defined procedures governing (and limiting) Cirrus Rojas's detention, the Court rejects his due process challenge. Consistent with *Zadvydas* and *Demore* [*v. Kim,* 538 U.S. 510 (2003)], Cirrus Rojas has a recognizable liberty interest in connection with his pre-removal detention. But as *Demore* held, and *Parra* [*v. Perryman*, 172 F.3d 954 (7th Cir. 1999)] explains, that liberty interest is limited. Cirrus Rojas is an alien who was found in the United States without authorization and is subject to removal proceedings. Consistent with federal law, he is being provided with the opportunity to oppose removal and using that opportunity to pursue an asylum claim. As explained in *Parra*, Cirrus Rojas's liberty interest is limited, and he has the key to his release in his own pocket; he can choose to accept removal to his homeland under Section 1229a.

2025 WL 3033967, at *13 (cleaned up) (citing *Parra*, 172 F.3d at 958); *see also Espinoza Hernandez,* 2026 WL 161509, *7–8; *Moran Rayo*, 2026 WL 594079 at *6. Ramirez Perez is receiving the process to which he is due through his removal proceedings under 8 U.S.C. §1229a(b)(4). *See Demore*, 538 U.S. at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process.") (cleaned up)). And as the Court has noted in *Cirrus Rojas*, *Espinoza*

*Hernandez*, and *Moran Rayo*, the government's interest in maintaining the current procedures is significant.  As the Seventh Circuit recognized in *Parra*, "the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs."  172 F.3d at 958.  "The private interest here is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country but eligible to live at liberty in his native land."  *Id.* (deemphasized).  In the end, the record confirms that Ramirez Perez's detention is being adjudicated consistent with a detailed set of procedural protections.  While the Court has sympathy for Ramirez Perez's position, he has not established that his detention, while he awaits the conclusion of his removal proceedings, violates due process.

<strong>CONCLUSION</strong>

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED** and this case is **DISMISSED with prejudice**.  The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order, ECF No. 2, is **DENIED**.

Dated at Milwaukee, Wisconsin on March 30, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge